**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS**

| | |
|---|---|
| SHARDA PARKER and JOSE IBANEZ, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>vs.<br><br>FPMC SERVICES, LLC, THE MANAGEMENT COMPANY AT FOREST PARK MEDICAL CENTER, NEAL RICHARDS GROUP, LLC, NEAL RICHARDS GROUP FOREST PARK DEVELOPMENT, LLC, and GLENDONTODD CAPITAL LLC,<br><br>Defendants. | Civil Action No. 3:16-cv-2791<br><br><u>**COMPLAINT – CLASS ACTION**</u> |

Plaintiffs Sharda Parker and Jose Ibanez ("Plaintiffs"), individually and on behalf of all others similarly situated, by their attorneys, hereby allege the following based upon information and belief and the investigation by their counsel:

**NATURE OF THE CLAIM**

1.      This is a class action on behalf of all former employees of Forest Park Medical Center's Dallas hospital ("Forest Park Dallas") who were terminated without cause and with less than one day's notice beginning on or about October 30, 2015 (the "Shutdown") in violation of the Worker Adjustment and Retraining Notification Act, 29 U.S.C. § 2101 *et seq*. ("WARN Act") and without receiving approximately four weeks' worth of compensation for work already performed.

2.      Forest Park Dallas was owned and/or operated, and its employees were employed, by FPMC Services, LLC ("FPMC Services"), The Management Company at Forest Park Medical Center ("FPMC Management"), Neal Richards Group, LLC ("NRG"), Neal Richards Group Forest

Park Development, LLC, and glendonTodd Capital LLC ("glendonTodd Capital") (collectively, "Defendants"), as well as non-parties Forest Park Realty Partners III, LP ("Forest Park Realty"), Forest Park Medical Center, LLC ("FPMC").

3.      Prior to the Shutdown, Plaintiffs and Forest Park Dallas's other employees had not been paid for approximately four weeks, and they still have not received compensation for their work.

4.      The WARN Act provides, in relevant part, that an employer within the scope of the WARN Act "shall not order a plant closing or mass layoff until the end of a 60-day period after the employer serves written notice of such an order." 29 U.S.C. § 2102(a).

5.      Accordingly, Plaintiffs, on behalf of themselves and some 196 similarly situated former employees of Forest Park Dallas, seek to recover compensation earned during the four weeks prior to the Shutdown and sixty days' wages and benefits from Defendants pursuant to 29 U.S.C. § 2104.

## JURISDICTION AND VENUE

6.      The federal law claim asserted herein arises under the WARN Act, codified at 29 U.S.C. § 2101 *et seq*.

7.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 & 1367 and 29 U.S.C. § 2104(a)(5).

8.      This Court has jurisdiction over each defendant named herein because each defendant has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by the District Court permissible under traditional notions of fair play and substantial justice.

**THE PARTIES**

9.     Plaintiff Sharda Parker was employed full-time at Forest Park Dallas until her termination on or around October 30, 2015.

10.     Plaintiff Jose Ibanez was employed full-time at Forest Park Dallas until his termination on or around October 30, 2015.

11.     Defendant FPMC Services is a limited liability company organized under the laws of the State of Texas. FPMC Services was created by Defendants to manage the services shared by Defendants' several hospitals, including general counsel, payroll, and vendor relations. Defendant FPMC Services' registered address is 12222 North Central Expressway, Suite 440, Dallas, Texas 75243.

12.     Defendant FPMC Management oversees operations at FPMC's hospitals. FPMC Management's registered address is 2101 Cedar Springs Road, Suite 1549, Dallas, Texas 75201.

13.     Defendant NRG is a limited liability company organized under the laws of the State of Texas. NRG was founded in order to develop and act as landlord for FPMC's hospitals, including Forest Park Dallas. NRG's registered office address is 3030 Olive Street, Suite 220, Dallas, Texas 75219.

14.     Defendant Neal Richards Group Forest Park Development, LLC is a limited liability company organized under the laws of the State of Texas. Neal Richards Group Forest Park Development, LLC is a subsidiary of NRG, and the general partner of Forest Park Realty.

15.     Defendant glendonTodd Capital is a limited liability company organized under the laws of the State of Texas. glendonTodd Capital is a private equity firm that was formed in conjunction with the founding of the other Forest Park entities. glendonTodd Capital's registered address is 2101 Cedar Springs Road, Suite 1540, Dallas, Texas 75201.

16.     Non-party Forest Park Realty is a holding company that co-owns Forest Park Dallas's principal assets at 11990 and 11972 North Central Expressway, Dallas, Texas 75243. Forest Park Realty filed a petition under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Northern District of Texas on November 30, 2015.

17.     Non-party BT Forest Park Realty Partners, LP ("BTFP") is a holding company that co-owns Forest Park Dallas's principal assets at 11990 and 11972 North Central Expressway, Dallas, Texas 75243. BTFP filed a petition under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Northern District of Texas on November 30, 2015.

18.     Non-party FPMC is a limited liability company organized under the laws of the State of Texas. FPMC develops and operates luxury hospitals, including Forest Park Dallas. FPMC's registered office address is 12222 North Central Expressway, Suite 440, Dallas, Texas 75243. FPMC filed a petition under Chapter 11 of the United States Bankruptcy Code for the Eastern District of Texas on February 21, 2016.

19.     As explained in more detail below, Defendants, Forest Park Realty, and FPMC are under common control and constitute a single employer under the WARN Act.

## FURTHER SUBSTANTIVE ALLEGATIONS

### *Company Background*

20.     FPMC operates several private, luxury hospitals, mostly within the State of Texas. FPMC's model was created around 2007 by two doctors, Richard Toussaint ("Toussaint") and Wade Barker ("Barker"). In conjunction with two other physicians, Toussaint and Barker set about founding Forest Park Dallas. To establish the hospital, Toussaint and Barker also created several entities.

21.     Initially, the physician-owners established Vibrant Healthcare Management LLC to operate the hospitals.[1] In addition, Defendant FPMC Services was established to manage the services shared by Defendants' several hospitals, including general counsel, payroll, and vendor relations. Importantly, Defendant NRG was also established to develop the hospitals and serve as the landlord owning the real estate. NRG's first chief executive officer was Derrick Evers ("Evers").

22.     Touissant and Barker also brought in Todd Furniss ("Furniss"), who formed his namesake private equity firm glendonTodd in 2010 to, *inter alia*, facilitate investment in the enterprise. Furniss currently also serves as CEO of NRG and Chairman of FPMC Management, both of which are part of glendonTodd's portfolio.

23.     Forest Park Dallas opened in 2009. NRG continued to promote the Forest Park model and opened several other hospitals throughout Texas.

24.     Although NRG has developed a handful of other sites in the Dallas area, the bulk of NRG's portfolio consists of Forest Park-related hospitals.

***Forest Park's Troubles Begin to be Revealed***

25.     In December 2014, Touissant was removed as a manager of NRG by vote of the managing partners, though he retained his investment in Forest Park-related entities. Touissant was also removed as a manager of Vibrant Healthcare Management in early 2015.

26.     On March 17, 2015, Furniss was named chairman of the newly formed FPMC Management. FPMC Management was established to reform the management of the Forest Park hospitals.

---

[1] As explained below, Vibrant Healthcare Management was replaced by a newly created entity, Defendant FPMC Management, in May 2015.

27.     Then, in May 2015, Toussaint was indicted by the federal government on 17 counts of healthcare fraud. According to the allegations, Toussaint filed $5 million in falsified claims, including a surgery that allegedly took place while Toussaint was himself undergoing surgery. Although Defendants were not implicated in the indictment, some of the fraud is alleged to have occurred at Forest Park Dallas. Toussaint has pleaded not guilty to the charges, which could carry a sentence of up to 10 years in prison and $250,000 in fines for each count.

28.     The same week of the Toussaint indictment, Evers and most of NRG's executive officers left NRG to establish their own real estate development company. In July 2015, NRG named Furniss its chief executive officer.

29.     During May 2015, Vibrant Healthcare Management was replaced by FPMC management as the operator of FPMC's hospitals.

30.     On or around September 10, 2015, employees at Forest Park Dallas were called to a town hall meeting with NRG and FPMC's executive officers. At the meeting, Forest Park Dallas employees were informed that funds had been secured by Defendants to meet their payroll obligations.

31.     In early October 2015, Defendants shut down Forest Park Dallas for approximately one week due to financial distress.

32.     On October 15, 2015, Defendants shut down the Forest Park hospital in San Antonio (a related facility but not currently defendants herein) without providing any prior notice to Defendants' employees at that location. Indeed, Defendants only gave notice the morning of the impending shutdown at noon. According to the letter provided by Defendants to the Texas Workforce Commission, "The Hospital ha[d] been under distress for several months and ha[d] been actively seeking additional capital to allow continued operations. However, it ha[d] become

apparent that the Hospital w[ould] not be able to secure the additional capital in order to avoid or postpone a shutdown." The employees laid off at the Forest Park San Antonio location were not paid for their last weeks of work and still had not received their pay more than one month after the closing.

***Forest Park Dallas's Shutdown***

33.     Plaintiffs bring this action individually, and on behalf of all other similarly situated former employees of Forest Park Dallas, seeking up to sixty days' wages and benefits in recompense for their termination, without notice or cause, in violation of the WARN Act and to recover their unpaid wages for their last four weeks of work.

34.     On or about October 30, 2015, Defendants' employees at Forest Park Dallas were notified that the Shutdown would take place that very day. The following day, the Forest Park Dallas employees received written notice of the Shutdown.

35.     On October 30, 2015, Defendants notified the Texas Workforce Commission that the Shutdown would take place that day. In the notice, Defendants stated that the "planned shutdown is expected to be permanent, and will affect the entire Hospital." Defendants further contended in the notice that the Shutdown was caused by Callidus Capital Corporation's refusal to provide further funding to FPMC.

36.     No history of Defendants' financial issues, the bank negotiations, or events leading up to the notice, including issues at the Forest Park hospital in San Antonio, was provided by Defendants.

37.     Defendants failed to provide 60 days' written notice in advance of terminating their employees in violation of the WARN Act.

38.     In addition, Defendants failed to pay the employees who worked at Forest Park Dallas the compensation earned over the approximately four weeks leading up to the Shutdown.

39.     Defendants' determination to effect the Shutdown was made in concert. Indeed, Defendants' structure, in which each of the Defendants operates or manages a discrete aspect of Forest Park Dallas, required the cooperation of Defendants to effectuate the Shutdown. Again, each of the Defendants was formed for the purpose of founding and/or operating the Forest Park-branded hospitals, and ultimately the same individuals own, manage, and control Defendants.

40.     On November 30, 2015, non-parties Forest Park Realty and BTFP filed petitions in the United States Bankruptcy Court for the Northern District of Texas requesting relief under Chapter 11 of the Bankruptcy Code ("Petition Date"). Defendants—companies that, with FPMC, control Forest Park Realty and BTFP, caused Forest Park Realty and BTFP to file for bankruptcy protection, and together with Forest Park Realty and BTFP have operated Forest Park Dallas as a single employer for purposes of the WARN Act—have not filed petitions for relief under the Bankruptcy Code.

41.     Forest Park Realty's bankruptcy petition was signed by Furniss as manager of Neal Richards Group Forest Park Development LLC, the general partner of Forest Park Realty. Wade Barker, one of the founders of FPMC and Forest Park Dallas, signed BTFP's petition in his capacity as a member of GP BT Healthcare Development Partners, LLC, that entity's general partner. According to Forest Park Realty and BTFP's motion for joint administration, Forest Park Realty and BTFP "own the real properties . . . that constitute Forest Park Dallas[.]"

42.     Plaintiffs' claims were earned within 180 days of the earlier of (i) the Petition Date, or (ii) the date of the cessation of the Defendants' business.

43.     Plaintiffs' claims are for wages, salaries, commissions, vacation, severance, sick leave, and contributions to an employee benefit plan.

## RELATED LITIGATION

44.     Plaintiffs initially brought suit against Defendants, FPMC, and Forest Park Realty by commencing an adversary proceeding in the Forest Park Realty bankruptcy case on December 23, 2015.

45.     Thereafter, FPMC declared its own bankruptcy. While Plaintiffs moved to lift the automatic stay to proceed with the adversary proceeding, the United States Bankruptcy Court for the Eastern District of Texas denied Plaintiffs' motion as "premature" given the early stage of the proceedings. Accordingly, in order to timely litigate against the remaining Forest Park Dallas entitles, Plaintiffs non-suited FPMC, without prejudice, pursuant to an order requiring that FPMC respond to discovery demands, and filed a timely proof of claim in FPMC's bankruptcy.

46.     Subsequently, Plaintiffs opposed motions to dismiss brought by Forest Park Realty and Defendants to this action. The United States Bankruptcy Court for the Northern District of Texas found that Plaintiffs had adequately alleged the existence of a single business enterprise, but dismissed Defendants from the adversary proceeding without prejudice to avoid the need to enter non-final orders subject to District Court review as to Defendants. The adversary proceeding against Forest Park Realty is ongoing.

47.     Plaintiffs bring this suit against Defendants, which arises from the same facts and circumstances as the adversary proceeding against Forest Park Realty and the proof of claim filed against FPMC.

48.     Plaintiffs may also seek to reinstate their claims against FPMC upon application to the bankruptcy court once its bankruptcy has further progressed.

## CLASS ACTION ALLEGATIONS

49.     Plaintiffs bring this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure and 29 U.S.C. § 2104(a)(5) on behalf of themselves and all other employees of Forest Park Dallas terminated without cause by Defendants on or about October 30, 2015 ("Class Members").

50.     The Class Members are so numerous that joinder of all Class Members is impracticable. The disposition of their claims in a class action will provide substantial benefits to the parties and the Court.

51.     The precise number of Class Members is unknown to Plaintiffs at this time and can only be ascertained through appropriate discovery.  Plaintiffs believe that there are at least 196 members in the proposed class. The identity, recent address, rate of pay, and afforded benefits of all Class Members may be ascertained from records maintained by Defendants, and Class Members may be notified of the pendency of this action by mail, using a form of notice similar to that customarily used in like class actions.

52.     Plaintiffs' claims are typical of the Class Members' because Plaintiffs, like all other Class Members, were the subject of Defendants' wrongful conduct, namely: termination without sixty days' advance notice and failure to pay contractually obligated wages.

53.     Plaintiffs will fairly and adequately protect the interests of all Class Members and has retained counsel experienced in class action litigation. Plaintiffs have no interests that conflict with those of the class identified herein.

54.     Questions of law and fact common to all Class Members predominate over any questions solely affecting individual Class Members, and include:

(a)     whether the Class Members were employed by Defendants;

(b)     whether Defendants terminated the Class Members without cause;

(c)     whether Defendants provided written notice at least sixty days prior to the Class Members' termination;

(d)     whether Defendants paid sixty days' wages and provided sixty days' benefits to the Class Members in connection with their termination;

(e)     how to calculate damages pursuant to the WARN Act; and

(f)     whether Defendants failed to pay the Class Members wages they had legally earned.

55.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy.  Consideration of this controversy as a class action will eliminate the need for duplicative litigation, as well as the possibility of inconsistent and varying judgments and standards of conduct for Defendants. Moreover, class action litigation is particularly appropriate in the employment context as individual Class Members may lack the financial resources necessary to prosecute discrete actions against Defendants, large corporate entities with significant resources at their disposal, and individual recoveries may be too small to justify taking on the expenses concomitant with prosecuting individual actions.

**CLAIMS FOR RELIEF**

**COUNT ONE**
**For Violation of the Worker Adjustment and Retraining Notification Act,**
**29 U.S.C. § 2101 *et seq*.**
**[Against All Defendants]**

56.     Plaintiffs incorporate by reference each and every preceding paragraph as though fully set forth herein.

57.     This Count is asserted by Plaintiffs on behalf of themselves and all Class Members against Defendants, and is based upon the WARN Act, codified at 29 U.S.C. § 2101 *et seq*. and its implementing regulations, codified at 20 C.F.R. § 639 *et seq*.

58.     Defendants, together with Forest Park Realty and FPMC, constitute a business enterprise that is, and at all relevant times has been, an "employer" as that term is defined by the WARN Act and implementing regulations, employing more than 100 employees (exclusive of part-time employees) who, in the aggregate, work at least 4,000 hours per week (exclusive of overtime hours).

59.     Defendants, together with Forest Park Realty and FPMC, controlled and operated Forest Park Dallas as a "single employer" for purposes of the WARN Act. Specifically,

(a)     FPMC was the majority or sole shareholder or unitholder or otherwise controlled each of the Defendants and Forest Park Realty;

(b)     each of the Defendants, Forest Park Realty, and FPMC was founded for the purpose of developing, managing, or operating the Forest Park-branded hospitals;

(c)     each of the Defendants, Forest Park Realty, and FPMC was ultimately controlled by the same individuals;

(d)     the Defendants' officers and employees' roles were interchanged among each of the entities and/or their services were shared among the Defendants, Forest Park Realty, and FPMC;

(e)     the Defendants, Forest Park Realty, and FPMC provided each other with managerial, financial, operational, and/or administrative support in order to operate Forest Park Dallas;

(f)     none of the Defendants, Forest Park Realty, and FPMC could have operated Forest Park Dallas or effected the Shutdown independently; and

(g)     the Defendants and FPMC caused Forest Park Realty to file for bankruptcy protection.

60.     Plaintiffs and all other Class Members were "affected employees" of Defendants, as that term is defined by the WARN Act and implementing regulations.

61.     Plaintiffs and all other Class Members were terminated by Defendants, who ordered a "mass layoff" or "plant closing" as those terms are defined by the WARN Act and implementing regulations, that occurred on or about October 30, 2015.

62.     Any mass layoff by Defendants affected more than 50 and more than 33% of any Defendant's employees at each facility within a thirty-day period.

63.     Any plant closing effected by Defendants affected 50 or more employees excluding any part-time employees within a thirty-day period.

64.     Plaintiffs and all other Class Members were terminated without cause.

65.     The provisions of the WARN Act required Defendants to give sixty days' advance written notice of termination to Plaintiffs and all other Class Members.

66.     Defendants failed to give sixty days' advance written notice of termination to Plaintiffs, all other Class Members, the Texas Workforce Commission, and the chief elected official of the local government within which the plant closing or mass layoff occurred in violation of the WARN Act.

67.     Defendants failed to pay Plaintiffs and each of the Class Members sixty days' wages, provide Plaintiffs and each of the Class Members with sixty days' benefits, and give

Plaintiffs and each of the Class Members all other forms of compensation to which they were entitled, following the plant closing or mass layoff, in violation of the WARN Act.

68.     Plaintiffs and all other Class Members are "aggrieved employees," as that term is defined by the WARN Act and its implementing regulations, who did not receive notice either directly or through an appropriate representative.

69.     Defendants are subject to a civil penalty of not more than five hundred dollars ($500) for each day of their violation as to a unit of local government.

70.     Plaintiffs, on behalf of themselves and all Class Members, will incur attorneys' fees in connection with the prosecution of this action, and is entitled to an award of reasonable attorneys' fees, costs, and disbursements pursuant to the WARN Act.

71.     Plaintiffs' claims are administrative claims or alternatively, priority claims pursuant to 11 U.S.C. § 507(a)(2) and (4)-(5).

## COUNT TWO
## For Breach of Contract
## [Against All Defendants]

72.     Plaintiffs incorporate by reference each and every preceding paragraph as though fully set forth herein.

73.     Defendants were party to an enforceable contract with each Class Member. Pursuant to the contract, Defendants were obligated to provide compensation at a certain rate to each Class Member.

74.     Plaintiffs and the Class Members continued to work for Defendants through around October 30, 2015 pursuant to their contracts.

75.     Defendants failed to pay the Class Members for approximately four weeks' work leading up to the Shutdown.

76.     Accordingly, Defendants breached the contracts between Defendants and each member of the Class and are liable to each Class Member for damages for breach of contract.

### COUNT THREE
### For *Quantum Meruit*
### [Against all Defendants]

77.     Plaintiffs incorporate by reference each and every preceding paragraph as though fully set forth herein.

78.     Plaintiffs and the Class Members provided valuable services to Defendants by serving in various roles Forest Park Dallas. As a result of the Class Members' services, Forest Park Dallas was able to continue operating its business and generate income.

79.     Defendants accepted the benefits of the Class Members' labor, which was performed at Defendants' request. Plaintiffs and the Class Members were offered and accepted employment by Defendants. Plaintiffs and the Class Members worked for Defendants for the purpose of monetary and other forms of compensation. Compensation was expected to be rendered at the time the Class Members provided their services, *i.e.*, on their designated day of pay, and Defendants' failure to provide compensation to the Class Members is inherently unjust.

80.     Accordingly, Defendants are liable to each Class Member for *quantum meruit*.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment as follows:

(a)     Declaring this action to be a proper class action pursuant to Fed. R Civ. R. 23;

(b)     Designation of Plaintiffs as Class Representatives;

(c)     Designation of Levi & Korsinsky, LLP and Reid Collins & Tsai LLP as Class Counsel;

(d)     Restitution equal to the lost pay and benefits to which Plaintiffs and all Class

        Members were entitled under the WARN Act;

(e)     Damages equal to the Class's unpaid wages for Defendants' breach of contract;

(f)     An award in *quantum meruit* equal to the Class's unpaid wages;

(g)     An award of reasonable attorneys' fees, costs, and disbursements pursuant to the

        WARN Act and other applicable law;

(h)     Pre- and post-judgment interest; and

(i)     Such other and further relief as the Court deems just and proper.


Dated:  September 30, 2016                    *s/ J. Benjamin King*
                                              J. Benjamin King
Of Counsel:                                      TX Bar No. 24046217
                                                 bking@rctlegal.com
Christopher J. Kupka (*pro hac vice* to be filed)   Brandon Lewis
   NY Bar No. 4904660                            TX Bar No. 24060165
   ckupka@zlk.com                                blewis@rctlegal.com
Michael B. Ershowsky (*pro hac vice* to be filed)   REID COLLINS & TSAI LLP
   NY Bar No. 5246541                         Thanksgiving Tower
   mershowsky@zlk.com                         1601 Elm Street, Suite 4250
LEVI & KORSINSKY LLP                          Dallas, Texas 75201
30 Broad Street, 24th Floor                   Tel: (214) 420-8900
New York, NY 10004                            Fax: (214) 420-8909
Tel: (212) 363-7500
Fax: (212) 363-7171                           *Attorneys for Plaintiffs*