# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS

| | |
|---|---|
| SHARDA PARKER and JOSE IBANEZ, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>vs.<br><br>FPMC SERVICES, LLC, THE MANAGEMENT COMPANY AT FOREST PARK MEDICAL CENTER, NEAL RICHARDS GROUP, LLC, NEAL RICHARDS GROUP FOREST PARK DEVELOPMENT, LLC, and GLENDONTODD CAPITAL LLC,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)  Civil Action No. 3:16-cv-02791-M<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## PLAINTIFFS SHARDA PARKER AND JOSE IBANEZ'S MOTION FOR CLASS CERTIFICATION AND MEMORANDUM OF LAW IN SUPPORT THEREOF

Dated: December 29, 2016

*Of Counsel:*

Eduard Korsinsky
Christopher J. Kupka (admitted *pro hac vice*)
Michael B. Ershowsky
LEVI & KORSINSKY LLP
30 Broad, 24th Floor
New York, NY 10004
Telephone: (212) 363-7500
Facsimile: (212) 363-7171

*[Proposed] Class Counsel*

J. Benjamin King (TX Bar No. 24046217)
Brandon Lewis (TX Bar No. 24060165)
REID COLLINS & TSAI LLP
Thanksgiving Tower
1601 Elm Street, Suite 4250
Dallas, Texas 75201
Tel: (214) 420-8900
Fax: (214) 420-8909

*Attorneys for Plaintiffs and [Proposed] Local Class Counsel*

Pursuant to Federal Rule of Civil Procedure 23 and Local Rule 23.2, Plaintiffs Sharda Parker and Jose Ibanez ("Plaintiffs") file this Motion for Class Certification and respectfully show the following:

1.      The proposed class of all former employees of Forest Park Medical Center's Dallas hospital ("Forest Park Dallas") who were terminated without cause on or about October 30, 2015 (the "Class") is so numerous that joinder of all members is impracticable, there are questions of law and fact common to the Class, Plaintiffs' claims are typical of the claims of the Class, and Plaintiffs will fairly and adequately protect the interests of the Class.

2.      Questions of law and fact common to Class members predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy alleged in Plaintiffs' complaint (D.I. 1, the "Complaint").

3.      Levi & Korsinsky ("L&K") and Reid Collins & Tsai LLP ("RCT") are adequate and appropriate counsel to serve as Class Counsel and Local Class Counsel, respectively.

Accordingly, Plaintiffs respectfully request that this Court certify the Class and appoint L&K and RCT Class Counsel and Local Class Counsel, respectively.

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................................................III

FACTUAL AND PROCEDURAL BACKGROUND...................................................................1

ARGUMENT ................................................................................................................................3

    I.   Numerosity........................................................................................... 4

    II.  Commonality........................................................................................ 5

    III. Typicality ........................................................................................... 5

    IV. Adequacy ........................................................................................... 6

    V.  Predominance...................................................................................... 7

    VI. Superiority.......................................................................................... 8

    VII.    Local Rule 23.2 ............................................................................ 9

CONCLUSION...........................................................................................................................10

# TABLE OF AUTHORITIES

**Cases**

*Alabama v. Blue Bird Body Co.*,
   573 F.2d 309 (5th Cir. 1978) ................................................................................ 8

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997)................................................................................... 4, 6, 7

*Barrie v. InterVoice-Brite, Inc.*,
   3:01-CV-1071-K, 2009 U.S. Dist. LEXIS 99253 (N.D. Tex. Oct. 26, 2009) ......... 8

*Conn v. Dewey & Leboeuf LLP*,
   487 B.R. 169 (Bankr. S.D.N.Y. 2013) ................................................................. 9

*Gaspar v. Linvatec Corp.*,
   167 F.R.D. 51 (N.D. Ill. 1996) ............................................................................. 5

*Georgine v. Amchem Prods. Inc.*,
   83 F.3d 610 (3d Cir. 1996) ................................................................................... 5

*Gurganus v. Furniss et al.*,
   3:15cv3964 (N.D. Tex., removed Dec. 14, 2015) ................................................ 9

*Hamilton v. First Am. Title Ins. Co.*,
   266 F.R.D. 153 (N.D. Tex. 2010) ........................................................................ 7

*Hohenstein v. Behringer Harvard Reit I, Inc.*,
   3:12-CV-3772-G, 2012 U.S. Dist. LEXIS 180013 (N.D. Tex. Dec. 20, 2012)...... 6

*Mullen v. Treasure Chest Casino, LLC*,
   186 F.3d 620 (5th Cir. 1999) ............................................................................... 4

*Parker et al. v. Forest Park Realty Partners III, LP. et al.*,
   15-03139-sgj (Bankr. N.D. Tex.) ......................................................................... 3

*Reneker v. Offill*,
   3:08-CV-1394-D, 2012 U.S. Dist. LEXIS 83017 (N.D. Tex. June 14, 2012) ......... 4

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
   559 U.S. 393 (2010)............................................................................................. 3

*Simms v. Jones*,
   296 F.R.D. 485 (N.D. Tex. 2013) ........................................................................ 4

*Unger v. Amedisys Inc.*,
  401 F.3d 316 (5th Cir. 2005) .................................................................................. 7

*United Farmers Agents Ass'n v. Farmers Ins. Exch.*,
  92-CA-373-JN, 1994 U.S. Dist. LEXIS 19449 (W.D. Tex. Jan. 4, 1994)............................... 6

*Williams v. Mohawk Indus.*,
  568 F.3d 1350 (11th Cir. 2009) .............................................................................. 5

**Other Authorities**

Sheryl Jean,
  *Forest Park Medical Center's financial woes mount with a fourth hospital in trouble*, Dallas
  News, Nov. 6, 2015,
   http://www.dallasnews.com/business/business/2015/11/06/forest-park-medical-centers-
  finanical-woes-grow-with-fourth-hospital-in-trouble ............................................... 4

**Rules**

Fed. R. Civ. P. 23 ............................................................................................. 1, 4, 7, 8

Fed. R. Civ. P. 24 ................................................................................................... 1

Fed. R. Evid. 201 ................................................................................................... 4

**Treatises**

2 Rubenstein, Conte, & Newberg,
  Newberg on Class Actions § 13:16 (4th ed. 2002) .................................................... 5

2 Rubenstein, Conte, & Newberg,
  Newberg on Class Actions § 4.27 (4th ed., 2011) .................................................... 8

2 W. Rubenstein,
  Newberg on Class Actions §4:50 (5th ed. 2012) ...................................................... 5

7A Charles A. Wright & Arthur R. Miller,
  Federal Practice and Procedure § 1778 (2d ed. 1986) ............................................. 7

Pursuant to Federal Rules of Civil Procedure 23 ("Rule 23") subsections (a), (b)(3), and (c)(1) and Local Rule 23.2, proposed class representatives Sharda Parker and Jose Ibanez ("Plaintiffs") respectfully submit this memorandum of law in support of their Motion for Class Certification brought against Defendants FPMC Services, LLC ("FPMC Services"), The Management Company at Forest Park Medical Center ("FPMC Management"), Neal Richards Group, LLC ("NRG"), Neal Richards Group Forest Park Development, LLC ("NRG Forest Park"), and glendonTodd Capital ("glendonTodd") (collectively, "Defendants"). As described in detail below, this case satisfies the prerequisites set forth in Fed. R. Civ. P. 23. Plaintiffs therefore request entry of an order:

> (a) certifying a class of all former employees of Forest Park Dallas, as that term is defined herein, that were terminated on or about October 30, 2015 without cause and without receiving sixty days' advance, written notice (the "Class");
>
> (b) appointing Sharda Parker and Jose Ibanez as Class Representatives; and
>
> (c) appointing Levi & Korsinsky LLP ("L&K") and Reid Collins Tsai LLP ("RCT") (together, "Plaintiffs' Counsel") as Class Counsel and Local Class Counsel, respectively.

## FACTUAL AND PROCEDURAL BACKGROUND

Forest Park Medical Center, LLC ("FPMC") is a limited liability company that develops and operates luxury hospitals, mostly within the State of Texas. (¶¶ 12, 20).[1] FPMC was created by Doctors Richard Toussaint ("Toussaint") and Wade Barker, who also created a number of other entities to found, own, and operate the luxury hospitals, including the Defendants. (¶¶ 20, 39). Specifically:

- FPMC Services was established to manage the services shared by Defendants' several

---

[1] All "¶ __" citations refer to Plaintiffs' complaint (D.I. 1, "Complaint") unless otherwise indicated.

1

hospitals, including general counsel, payroll, and vendor relations. (¶ 21).

- NRG developed the hospitals and served as the landlord owning the real estate. (*Id.*).

- NRG Forest Park is the general partner of Forest Park Realty (defined below). (¶ 16).

- glendonTodd was established to facilitate investment in the enterprise. (¶¶ 15, 22).

- FPMC Management provides management services to the Forest Park hospitals. (¶ 12).

Each of Defendants, along with FPMC, BT Forest Park Realty Partners, LP ("BTFP"), and Forest Park Realty Partners III, LP ("Forest Park Realty"),[2] was formed for the purpose of founding and operating the Forest Park-branded hospitals, and the same individuals own, manage, and control Defendants. (¶¶ 39, 59). Plaintiffs were employed full-time at one of these hospitals – Forest Park Dallas – until their termination on or around October 30, 2015. (¶¶ 9-10).

Forest Park Dallas opened in 2009. (¶ 23). In December 2014, Toussaint was removed as a manager of NRG by vote of the managing partners, though he retained his investment in Forest Park-related entities, and in May 2015 Toussaint was indicted by the federal government for healthcare fraud. (¶¶ 25, 27). Before Toussaint's indictment but after his removal from NRG, FPMC Management was established to reform the management of the Forest Park hospitals, and FPMC Management took over operations in May 2015. (¶¶ 26, 29).

On or around September 10, 2015, employees at Forest Park Dallas were called to a town hall meeting with NRG and FPMC's executive officers whereat the employees were informed that Defendants had secured funds to meet their payroll obligations. (¶ 30). Nevertheless, in early October, Defendants shut down Forest Park Dallas for approximately one week due to financial distress, and on October 15, 2015 Defendants permanently shuttered a Forest Park hospital in San Antonio. (¶¶ 31-32). On or about October 30, 2015, Defendants' employees at Forest Park Dallas,

---

[2] Non-parties BTFP and Forest Park Realty were holding companies that own Forest Park Dallas's principal assets at 11990 and 11972 North Central Expressway, Dallas, Texas 75243. (¶¶ 16-17).

as well as the Texas Workforce Commission, were notified that Forest Park Dallas would be shut down permanently that day and all Forest Park Dallas employees, including Plaintiffs, would be terminated. (¶¶ 34-35). Defendants failed to provide any advance, written notice of the terminations, provide sixty days' wages and benefits, or compensate the terminated employees for the previous four weeks they had worked. (¶¶ 37-38, 66-67, 75, & 79).

On December 23, 2015, Plaintiffs commenced an adversary proceeding by filing a class action complaint in the bankruptcy case of Forest Park Realty alleging violations of, *inter alia*, the WARN Act, which requires that, where certain statutory prerequisites are satisfied, employers provide sixty days' advance, written notice of a plant closing or mass layoff. *See Parker et al. v. Forest Park Realty Partners III, LP. et al.*, 15-03139-sgj (Bankr. N.D. Tex.). Defendants were dismissed from that action because the United States Bankruptcy Court for the Northern District of Texas, which is hearing the adversary proceeding, was not certain that it had jurisdiction over the Defendants herein.[3] Accordingly, Plaintiffs filed their Complaint in this Court on September 30, 2016. Pursuant to Rule 23.2 of the Local Rules for the Northern District of Texas, Plaintiffs file this instant motion because it is within 90 days of the date on which the Complaint was filed. While Plaintiffs have not yet had the benefit of discovery, they submit that the argument advanced herein will be supported by evidence showing the propriety of certifying a class so that this action can proceed in a class capacity.

## ARGUMENT

To certify a class, a movant must satisfy the criteria set forth in Rule 23(a), and the class "also must fit into one of the three categories described in subdivision (b)." *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010). The prerequisites of Rule

---

[3] The adversary proceeding against Forest Park Realty is ongoing, and Plaintiffs have filed a proof of claim in FPMC's bankruptcy.

3

23(a) are: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a); *Simms v. Jones*, 296 F.R.D. 485, 508 (N.D. Tex. 2013). Plaintiffs seek certification under Rule 23(b)(3), which requires that questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. Fed. R. Civ. P. 23(b)(3).

## I.    NUMEROSITY

A movant satisfies the numerosity prong upon a showing that the proposed class is "so large that joinder of all members is impracticable." *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 623 (5th Cir. 1999) (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613 (1997)). Plaintiffs alleged that at least 196 employees were terminated by Defendants on or about October 30, 2015. (¶¶ 49, 51). This figure is corroborated by contemporary reporting by, among other media, the Dallas Morning News. Sheryl Jean, *Forest Park Medical Center's financial woes mount with a fourth hospital in trouble*, Dallas News, Nov. 6, 2015, http://www.dallasnews.com/business/business/2015/11/06/forest-park-medical-centers-finanical-woes-grow-with-fourth-hospital-in-trouble.[4] Courts in the Fifth Circuit have regularly found that the numerosity requirement is satisfied with significantly fewer class members. *See*, *e.g.*, *Mullen*, 186 F.3d at 624 (observing that a class of 100 to 150 members satisfies the numerosity

---

[4] Courts may take judicial notice of a fact "not subject to reasonable dispute in that it is . . . capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2); *see also Reneker v. Offill*, 3:08-CV-1394-D, 2012 U.S. Dist. LEXIS 83017, at *41 (N.D. Tex. June 14, 2012) (discussing the propriety of such notice).

requirement). Hence, Plaintiffs have pleaded that the class is so large that joinder of all members is not practicable.

## II.    COMMONALITY

The commonality prong of Rule 23 is satisfied where a class action involves issues that are susceptible to class-wide proof. 2 W. Rubenstein, Newberg on Class Actions §4:50, 196-97 (5th ed. 2012). As discussed in further detail below with respect to the predominance inquiry, there are numerous such issues, including (i) whether the WARN Act applies; (ii) whether the terminations violated the WARN Act; (iii) whether the Class members were employed by Defendants at Forest Park Dallas; (iv) whether Defendants provided sixty days' advance written notice prior to the Class members' termination; (v) whether Defendants paid sixty days' wages and provided sixty days' benefits to the Class members in connection with their termination; (vi) whether Defendants paid the Class members for the weeks of work they dutifully performed prior to the closure of Forest Park Dallas; and (vii) how to calculate damages pursuant to the WARN Act and pendant state law claims.

These common questions of law and fact are more than enough to clear what many courts have characterized as the "low hurdle" of commonality. 2 Rubenstein, Conte, & Newberg, Newberg on Class Actions § 13:16 (4th ed. 2002); *Williams v. Mohawk Indus.*, 568 F.3d 1350, 1356 (11th Cir. 2009); *Gaspar v. Linvatec Corp.*, 167 F.R.D. 51, 57 (N.D. Ill. 1996); *see also Georgine v. Amchem Prods. Inc.*, 83 F.3d 610, 627 (3d Cir. 1996) (discussing the "low threshold for commonality").

## III.    TYPICALITY

The typicality requirement goes to whether the named representatives' claims have the "same essential characteristics as the claims of the class at large." *Hohenstein v. Behringer Harvard Reit I, Inc.*, 3:12-CV-3772-G, 2012 U.S. Dist. LEXIS 180013, at *7 (N.D. Tex. Dec. 20,

2012) (citation and quotation omitted); *see generally United Farmers Agents Ass'n v. Farmers Ins. Exch.*, 92-CA-373-JN, 1994 U.S. Dist. LEXIS 19449, at *3 (W.D. Tex. Jan. 4, 1994) ("A strong similarity of legal theories will satisfy the typicality requirement even if substantial factual distinctions exist between the named and unnamed class members."). Here, the claim advanced by Plaintiffs is identical to that of the Class, *viz*: that Defendants violated the WARN Act by failing to provide advance notice of terminations. Plaintiffs, like all Class members, were employed by Defendants at Forest Park Dallas, and were terminated without cause on or about October 30, 2015, without the required notice. The same legal theory applies to each Class member's potential claim.

## IV.   ADEQUACY

The adequacy prong concerns "conflicts of interest between named parties and the class they seek to represent." *Amchem*, 521 U.S. at 625. Plaintiffs Parker and Ibanez filed their Complaint to compel Defendants to pay wages and benefits to the Class members as required by the WARN Act and state law, and there is no conflict between their interests and those of the Class, generally.

Moreover, Plaintiffs' Counsel have extensive experience in class action and other complex litigation and possess the resources necessary to prosecute this action on behalf of the Class. L&K has been appointed sole or co-lead counsel in numerous class actions nationwide. A copy of L&K's firm resume is annexed to the Declaration of Christopher J. Kupka as Exhibit 1 (Appx. P. 0004 - 0032).  J. Benjamin King and Brandon V. Lewis of RCT have extensive experience in class actions and complex litigation matters, and are highly qualified to act as local counsel in this action. Copies of Mr. King's and Mr. Lewis's biographies are annexed to the Declaration of J. Benjamin King as Exhibits 1 and 2, respectively (Appx. P. 0037 – 0038, 0040 – 0041). Plaintiffs and Plaintiffs'

Counsel share the same interest as other Class members in maximizing relief for the class, and this Court should therefore find the proposed representation is in the best interest of the Class.

## V.     PREDOMINANCE

Related to the commonality inquiry, the "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. This inquiry is satisfied where a movant demonstrates that "common issues of law or fact 'predominate over any questions affecting only individual members.'" *Unger v. Amedisys Inc.*, 401 F.3d 316, 320 (5th Cir. 2005) (quoting Rule 23(b)(3)).

"When common issues present a significant aspect of the case and it can be resolved for all members of the Class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." 7A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1778 (2d ed. 1986). Here, the questions enumerated with respect to the commonality inquiry, discussed *supra* § II, as well as other relevant questions, will all be answered with the same evidence. That is, many of the questions concern Defendants' operations and compliance with the WARN Act, which do not concern proof on an individual basis. Plaintiffs will establish that Defendants terminated all of their employees at Forest Park Dallas on the same day, and did not pay any of its former employees any of the compensation to which they were entitled under the WARN Act and state law.

On the other hand, issues requiring an individual determination are few and minor. The fact that damages may vary based on each employees' income and benefits, for example, would not preclude class certification because damages could be calculated by a "mechanical and formulaic calculation," as opposed to the type of "separate 'mini-trials' of an overwhelmingly large number of individual claims" such that common issues would not predominate. *Hamilton v. First Am. Title Ins. Co.*, 266 F.R.D. 153, 165 (N.D. Tex. 2010). Similarly, if any individual

7

members were to be removed from the Class, it would not "have a substantial effect on the substance or quantity of evidence offered." *Alabama v. Blue Bird Body Co.*, 573 F.2d 309, 322 (5th Cir. 1978). Because Class-wide issues of law and fact clearly predominate over individual issues, if any, the predominance requirement is satisfied.

## VI.    SUPERIORITY

Finally, a movant seeking class certification who shows that common questions of law and fact predominate must also show that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). In other words, a court considering a certification motion must balance economies of time, effort, and expense, as well as whether individual actions would be wasteful, duplicative, present managerial difficulty, or be adverse to judicial economy. *Barrie v. InterVoice-Brite, Inc.*, 3:01-CV-1071-K, 2009 U.S. Dist. LEXIS 99253, at *54 (N.D. Tex. Oct. 26, 2009).

Rule 23(b)(3) lists four facts relevant to whether a class action is superior to other available methods for fairly and efficiently adjudicating the controversy, namely: (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action. Here, there is no indication that individual plaintiffs wish to control the litigation; on the contrary, because "the claims of the class members are small, denial of a class action would effectively exclude them from judicial redress." 2 Rubenstein, Conte, & Newberg, Newberg on Class Actions § 4:27 (4th ed., 2011). The only other litigation of which Plaintiffs are aware was initially brought in an individual capacity in state court, and has since been remanded when the plaintiff abandoned her WARN Act claim. *See*

*Gurganus v. Furniss et al.*, 3:15cv3964 (N.D. Tex., removed Dec. 14, 2015). The Northern District is a proper and suitable forum, and the WARN Act claim presents no manageability concerns.

Indeed, largely because class actions are superior mechanisms for suits such as the matter at bar, "numerous courts have recognized that WARN Act claims lend themselves to class treatment." *Conn v. Dewey & Leboeuf LLP, (In re Dewey & Leboeuf LLP)*, 487 B.R. 169, 179 n.8 (Bankr. S.D.N.Y. 2013). There are no concerns before the Court that suggest a different result here.

## VII.   LOCAL RULE 23.2

The specific factual allegations underlying Plaintiffs' claims are set forth herein. By way of brief recapitulation, Plaintiffs believe that the class is comprised of approximately 196 members who were terminated on or about October 30, 2015 and have claims under both the WARN Act and Texas state law for unpaid wages and benefits. The Court has federal question jurisdiction over Plaintiffs' WARN Act claim, and supplemental jurisdiction over Plaintiffs' claims for breach of contract and *quantum meruit*. (¶¶ 6-7). Plaintiffs' counsel have undertaken their representation on a contingency basis, and have agreed to assume the costs inherent in class action litigation, including but not limited to the expense of class notice. (Kupka Decl. ¶ 3, Appx. P. 0002). Plaintiffs believe that substantial document discovery will be necessary for purposes of class certification, and will seek to take the depositions of numerous officers of the Defendant entities, in addition to the discovery that is ongoing in Forest Park Realty's bankruptcy action, which is scheduled for an evidentiary hearing in early April 2017. (*Id*. at ¶ 4, Appx. P. 0002). In the event that Plaintiffs achieve a recovery, they intend to seek an award of attorneys' fees for their counsel in an amount dependent on the stage of the litigation in which the recovery is achieved, likely in the range of 25-33% but in any event not to exceed 40% of the total recovery net of expenses. (*Id*. at ¶5, Appx. P. 0002).

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully request that this Court grant their Motion for Class Certification.

Dated: December 29, 2016                    Respectfully submitted,

                                                   _____/s/ J. Benjamin King_____
                                                J. Benjamin King (TX Bar No. 24046217)
                                                bking@rctlegal.com
                                                Brandon Lewis (TX Bar No. 24060165)
                                                blewis@rctlegal.com
                                                REID COLLINS & TSAI, LLP
                                                Thanksgiving Tower
                                                1601 Elm Street, Suite 4250
                                                Dallas, Texas 75201
                                                Tel: (214) 420-8900
                                                Fax: (214) 420-8909

                                                *Attorneys for Plaintiffs and [Proposed] Co-Lead Counsel*

Eduard Korsinsky
Christopher J. Kupka (admitted *pro hac vice*)
Michael B. Ershowsky
**LEVI & KORSINSKY LLP**
30 Broad Street, 24th Floor
New York, NY 10004
Tel: (212) 363-7500
Fax: (866) 367-6510

*Of Counsel and [Proposed] Class Counsel*

10

## <u>CERTIFICATE OF CONFERENCE</u>

On December 29, 2016, a conference was held between my office and Mark Fritsche, attorney for Defendants, and he stated that Defendants oppose Plaintiffs' Motion for Class Certification, contending that the facts alleged do not warrant class certification.


Dated this 29th day of December, 2016

/s/ Christopher J. Kupka
Christopher J. Kupka (admitted *pro hac vice*)
ckupka@zlk.com
LEVI & KORSINSKY LLP
30 Broad, 24th Floor
New York, NY 10004
Telephone: (212) 363-7500
Facsimile: (212) 363-7171

## CERTIFICATE OF SERVICE

I hereby certify that on this day I have electronically filed the foregoing **MOTION FOR CLASS CERTIFICATION** with the Clerk of the Court using the CM/ECF system, which will automatically send an e-mail notification of such filing to all attorneys of record.

Dated this 29th day of December, 2016.

*s/ J. Benjamin King*
J. Benjamin King (TX Bar No. 24046217)
bking@rctlegal.com
REID COLLINS & TSAI, LLP
Thanksgiving Tower
1601 Elm Street, Suite 4250
Dallas, Texas 75201
Tel: (214) 420-8900
Fax: (214) 420-8909